United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Francine Radtka, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-81013-Civ-Scola |
| | ) |
| Wal-Mart Stores, Inc., Defendant. | ) |

### Order Granting Motion to Dismiss

This case is an offshoot of the underlying complaint addressed by the United States Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In *Dukes*, the Supreme Court reversed the certification of a nationwide class of female Wal-Mart employees claiming gender discrimination. The Plaintiff here, Francine Radtka, after again seeking relief through a regional class action and then as a member of a 33-plaintiff complaint, now seeks redress individually. In her amended complaint (Am. Compl., ECF No. 3), Radtka lodges two counts under Title VII regarding her compensation and promotion opportunities: in count one she alleges disparate treatment and in count two she alleges disparate impact. Walmart contends Radtka does not plead specific, individualized facts showing that she, herself, was discriminated against, either through disparate treatment or impact; Radtka fails to establish standing; and Radtka's claims are all time-barred. After careful review, the Court agrees that Radtka fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) and thus **grants** Wal-Mart's motion (**ECF No. 7**) and dismisses Radtka's complaint.

### 1. Background[1]

Radtka joined Walmart after working for seven years as a "Deli Manager" at Publix. (Am. Compl. at ¶ 122.) Although she says she was employed by Walmart from 1995 to 2000, Radtka expounds that "[s]he joined Wal-Mart in 1996 for the position of Deli Manager (Assistant Manager) in the new Supercenter, [at] Store 315." (*Id.*) She says she had aspirations to become the co-manager and then the district manager of the deli department. (*Id.*) While employed, Radtka regularly discussed her desire for promotions with her store manager, Steve Schultheis, but to no avail. (*Id.* at ¶ 123.) In fact, Radtka maintains she was generally "denied promotional opportunities" for a number of positions: "Support Manager/Zone Manager/Position Equivalent"; "Management in Training/Assistant Manager/Position Equivalent"; "Co-Manager/Position

---

[1] The Court accepts the complaint's factual allegations, as set forth below, as true for the purposes of evaluating the motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Equivalent"; and "Store Manager/Position Equivalent." (*Id.* at ¶ 106.a.ii.) Radtka also learned that her "male counterparts" were earning more than she was despite those employees' having similar or less experience than she did. (*Id.* at 124.)

Radtka also provides an additional twenty-five pages of background information regarding Walmart's organizational structure, the roles various salaried positions played in the organization regarding compensation and promotion decisions, and a number of policies and practices that guided these decisions. (*E.g.*, *id.* at ¶¶ 37–70, 74–99.) She additionally relays a statistical analysis that indicates that, at some point (she does not specify when), 85 to 90 percent of the stores in Walmart region 10—Radtka's region—"show disparate pay that is lower for women as compared to similarly situated men." (*Id.* at ¶ 71.) Radtka also sets forth facts showing that Walmart's management team was aware that, on average, female employees were paid less than men and many female employees experienced other disparities. (*Id.* at ¶¶ 72, 107–119). And she further maintains that female Walmart employees are less likely than their male counterparts to receive promotions to management positions (*id.* at ¶ 83) and must wait significantly longer for promotions despite having equal or better qualifications (*id.* at ¶¶ 83–84). Radtka also lists nineteen incidents, occurring at other stores in her region, where other women experienced gender-based discrimination. (*Id.* at ¶¶ 100–01.)

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174

(11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## 3. Discussion

### A. Radtka fails to sufficiently allege that Walmart intentionally discriminated against her with respect to her pay and promotion opportunities.

Under Title VII of the Civil Rights Act, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "[C]omplaints alleging discrimination . . . must meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 Fed. App'x 935, 937 (11th Cir. 2011). Thus, Radtka's complaint must contain "sufficient factual matter" to support a reasonable inference that Walmart engaged in intentional gender discrimination against her in relation to her compensation and denial of promotions. *Henderson*, 436 Fed. App'x at 937. There are any number of ways Radtka can do this, including "alleging facts showing that similarly-situated [male employees] were offered more favorable [employment] terms," *id.*, or direct evidence of discrimination, *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004). After careful review, the Court agrees with Walmart and finds Radtka has not set forth sufficient factual allegations that would demonstrate, either directly or circumstantially, that she personally suffered any adverse employment consequences based on intentional gender discrimination.

Radtka challenges this conclusion, relying on *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002), and at the same time insisting she has met *Twombly's* plausibility standards by pleading "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the defendant's liability. (Pl.'s Resp., ECF No. 13, 12 (quoting *Twombly*, 550 U.S. at 556).) While the Court agrees that *Swierkiewicz* supports Radtka's position that she need not set forth evidence establishing a prima facie case under the *McDonnell* framework[2] in order to

---

[2] Under the *McDonnell* framework, "[a] plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson*, 376 F.3d at 1087. If such comparators are unavailable, a plaintiff may establish a prima facie case by "present[ing] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotations and citations omitted).

survive dismissal, the Court nonetheless disagrees that that case absolves her from alleging actual facts that support her claim of gender discrimination. *See Pouyeh v. UAB Dept. of Ophthalmology*, 625 Fed. App'x 495, 497 (11th Cir. 2015) (holding that a complaint must contain factual allegations demonstrating, either directly or circumstantially, that a defendant's actions were discriminatory); *Henderson*, 436 Fed. App'x at 938 (requiring a plaintiff to plead facts that "raise[] a plausible inference that [the defendant] discriminated against [the plaintiff]"). Ultimately, Radtka's allegations cannot carry her past dismissal.

For example, in support of her insistence that she has set forth sufficient facts, Radtka first points to her allegation that "she had management experience and sought advancement to no avail." (Pl.'s Resp. at 12.) To begin with, nothing about this allegation depicts, or even implies, any discriminatory intent. Nor does it even set forth facts, with respect to her promotion claim, that Radtka sought a specific promotion or that she was even qualified for such a promotion. Her further assertion that she was "denied promotional opportunities" for four categories of various manager positions does not fill these gaps, especially since she describes these positions, or their "position equivalent," in only the vaguest of terms. (Am. Compl. at ¶ 106.a.ii; *see also id.* at ¶ 122 (maintaining she had "aspirations for Co-Manager and subsequent District Manager").) Nothing set forth in these allegations would enable the Court to reasonably infer that Walmart's decision not to promote Radtka was due to discriminatory animus. *See Veale v. Florida Dept. of Health*, 2:13-CV-77-FTM-38UAM, 2013 WL 5703577, at *5 (M.D. Fla. July 29, 2013) (requiring "allegations of specific facts to explain how the disparate treatment occurred" in order to properly plead Title VII discrimination).

Next, Radtka's allegations that "her male counterparts were making more than her, despite similar (or less) experience" and that she "believes she was paid less than other similarly situated men during her employment within Region 10" are also insufficient. These allegations are nothing but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore "do not suffice." *Watts v. Ford Motor Co.*, 519 Fed. App'x 584, 586 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). And while the Court agrees with Radtka that "[s]he is not required to lay out every single detail of her employment in her Complaint" (Pl.'s Resp. at 13), she must nonetheless provide at least some "nonconclusory descriptions of specific, discrete facts of the who, what, when, and where variety" that plausibly show she is actually entitled to relief. *Watts*, 519 Fed. App'x at 587 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)). It is not enough, as Radtka adamantly maintains, for her to simply "identif[y] the store where she worked and the years she was employed by Wal-Mart." (Pl.'s Resp. at 13.) There is nothing in these facts that would

differentiate between an employee who experienced discrimination from one who did not.

Nor can the allegations Radtka sets forth within her disparate treatment count, or elsewhere, save her, as she suggests. These allegations, too, all suffer from their threadbare and conclusory nature as shown, by example, in the following:

- "Plaintiff herein has been denied equal pay for salaried positions or hourly positions." (Am. Compl. at ¶ 106.a.i.)
- "Additionally, Plaintiff has been denied promotional opportunities for" various generically identified managerial positions. (*Id.* at ¶ 106.a.ii.)
- "Wal-Mart denied Plaintiff pay equal to that earned by similarly situated men, on the basis of gender." (*Id.* at ¶ 127.)
- "Wal-Mart denied Plaintiff equal opportunities for promotion to positions that she was qualified for and interested in, on the basis of gender." (*Id.* at ¶ 128.)
- "Wal-Mart's conduct of engaging in discrimination against the Plaintiff . . . by making compensation and promotion decisions on the basis of gender violates Title VII." (*Id.* at ¶ 129.)
- "The Defendant has failed to comply with [its] statutory duty . . . to eliminate discrimination from the work place." (*Id.* at ¶ 130.)

Every single one of these allegations amounts to nothing more than legal conclusions and formulaic recitations of the elements of Title VII discrimination claims. "These allegations might have survived a motion to dismiss prior to *Twombly* and *Iqbal*. But now they do not." *Ansley v. Florida, Dept. of Revenue*, 409CV161-RH/WCS, 2009 WL 1973548, at *2 (N.D. Fla. July 8, 2009) (requiring a "plaintiff in an employment-discrimination case [to] allege facts that are either (1) sufficient to support a plausible inference of discrimination, or (2) sufficient to show, or at least support an inference, that he can make out a prima facie case under the familiar burden-shifting framework set forth in *McDonnell*").

Furthermore, Radtka's allegations regarding "Wal-Mart's policy of gender discrimination in Region 10" and "its systematic disparate pay and promotional issues during . . . Plaintiff's employment" (Pl.'s Resp. at 12–13) cannot secure her entitlement to relief. While "proof that an employer engaged in a pattern or practice of discrimination may be of substantial help in demonstrating an employer's liability in the individual case[,] such proof cannot relieve the plaintiff of the need to establish each element of his or her claim." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 149 (2d Cir. 2012). So, for example, Radtka's allegation that, at some point, 85 to 90 percent of the stores in her region showed pay disparities between women as compared to similarly situated

men is insufficient to show that she herself experienced pay discrimination—or even pay disparity. (Am. Compl. at ¶ 71.) Again, although "[e]vidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment . . . claim," it is nonetheless not a viable "method of proof as an independent and distinct method of establishing liability." *Chin*, 685 F.3d at 150.

Finally, Radtka's attempts to tie these allegations of a pattern and practice of discrimination throughout the Walmart organization to the actual discrimination she says she herself was individually subjected to also fail. In each instance, Radtka's allegations are again conclusory and without any actual factual basis of support, for example:

- "Women, including Plaintiff, have been assigned to stores that generate lower profits, and a result were paid less than their male counterparts." (Am. Compl. at ¶ 69.)
- "Here, Plaintiff was affected by that discriminatory pay system." (*Id.* at ¶ 72.)
- "As a consequence [of various policies and practices], qualified women, including the Plaintiff herein, in Plaintiff's Region have been denied equal access to promotions because of their gender." (*Id.* at ¶ 79.)
- "Walmart accomplished [its] discrimination by: engaging in a pattern or practice of making pay and promotion decision[s] on the basis of gender and specifically paying each Plaintiff less than her similarly situated male peers and denying Plaintiff promotional opportunities." (*Id.* at ¶ 106.a.)
- Walmart discriminated by "acting with reckless indifference to the rights of Plaintiff despite [*sic*] systemic gender discrimination in the equal pay and promotion of its female employees." (*Id.* at ¶ 106.d.)
- "Plaintiff brings this claim individually but does so with the knowledge of other Plaintiffs from the same Wal-Mart Region with similar experiences." (*Id.* at ¶ 119.)

Even under the most liberal construction, these legal conclusions, generalities, and sweeping statements, without any actual supporting facts, do not sufficiently state a claim for discrimination that is plausible on its face. At most, Radtka has succeeded in establishing only the "sheer possibility" that Walmart has acted unlawfully. *Iqbal*, 556 U.S. at 678.

### B. Radtka fails to sufficiently allege claims for disparate impact regarding either pay or promotion opportunities.

Title VII makes an employer liable for disparate impact if "a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of . . . sex . . . and the respondent

fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e–2(k)(1)(A)(i). "[A] plaintiff can recover under the disparate impact theory by proving that some employment practice that is facially neutral in its treatment of similarly situated employees has a disproportionately adverse effect on those employees who are a member of some protected class." *Mitchell v. Jefferson County Bd. of Educ.*, 936 F.2d 539, 546 (11th Cir. 1991).

Radtka's allegations here fail to state a claim for disparate impact with respect to the pay and promotion of female versus male Walmart employees. To begin with, much like her allegations of disparate treatment, Radtka's allegations of disparate impact lack factual support. For instance, she charges that "Wal-mart's compensation policies, including its failure to require managers to base pay decisions for individual employees on job related criteria . . . , its policy of setting pay adjustments based on the associates' prior pay, and its 2004 pay class restructuring have," together, "had an adverse impact upon female employees . . . including the Plaintiff." (*Id.* at ¶ 73.) Not only does this allegation fail to set forth specific supporting facts, it fails to identify the facially neutral aspects of the policies that have resulted in the purportedly adverse impact. Many of Radtka's other disparate-impact allegations are of the same ilk:

- "[Q]ualified women" "have been denied equal access to promotion because of their gender" as a result of Walmart's failure "to specify the weight that should be accorded any requirements for promotion, provide for detailed objective criteria for the selection of employees for promotion, or monitor the policies and practices used . . . for the selection of employees for promotion." (*Id.* at ¶ 79.)

- "Wal-Mart's promotion policies, including its failure to require managers to base promotion decisions for individual employees on job related criteria, have had a statistically significant adverse impact upon its female employees . . . , including the Plaintiff." (*Id.* at ¶ 94.)

- Walmart's policies (such as "its failure to require or use job related criteria for making compensation decisions, its policy of setting pay adjustments based on the associate's prior pay," "its 2004 pay class restructuring," "its failure to provide for an open application process or job posting; its relocation and travel requirements for management positions, its scheduling requirements . . . ; and its failure to apply job-related objective criteria for making management selections") all adversely impacted Radtka. (*Id.* at ¶ 142.)

These are all exactly the types of conclusory assertions that were held to be insufficient in *Iqbal*.

Additionally, many of Radtka's allegations fail to connect the adverse impact of a particular policy or procedure to any specific injury she herself has

suffered. For example, Radtka explains that the "formulaic use of prior pay rates to set starting Assistant Manager pay meant prior pay disparities adverse to women would be perpetuated" and that "the use of exceptions . . . provided the opportunity to create additional disparities adverse to women." (Am. Compl. at ¶ 66.) She also complains that "[p]erformance ratings . . . could incorporate bias and unfairly rate women Assistant Managers lower than their peers." (*Id.* at ¶ 67.) Similarly, she says that because "merit increases were computed as a percentage of the base pay rate," "prior disparities in pay" were "perpetuat[ed]" and "provided an opportunity for . . . decisionmakers to exercise bias in choosing whom to favor." (*Id.* at ¶ 68.) Radtka further maintains that "promotional policies and practices regarding management-track positions have denied interested and qualified females equal access to promotional opportunities because promotion opportunities are not posted, there is not an open application system, and employees are not informed of the criteria for promotion." (*Id.* at ¶ 79; *see also*, ¶¶ 80 (complaining of policies that "resulted in the exclusion of interested and qualified women in Plaintiff's region from the management training program"), 82 (pointing out that "Wal-mart has had a significantly lower percentage of female managers than its largest competitors"), 83 (similar), 84 (similar), 145 (maintaining that "Wal-Mart's discriminatory practices . . . have denied female employees promotional opportunities and compensation to which they are entitled, which has resulted in the loss of past and future wages and other job benefits"). But none of these assertions is ever factually tied to adverse impacts Radtka says she herself endured. How did Radtka's own prior pay result in an adverse decision regarding her own starting base pay? What pay "exceptions" were applied such that she herself was negatively impacted? How did "performance ratings" negatively impact her? What was it about the lack of a job posting or an open application system that prevented her from having "equal access to promotional opportunities"? How did policies relating to assistant managers apply to her? Without supplying any causal links between the complained of policies and her own injury, Radtka cannot establish standing to complain about the resulting disparate impact based on these allegations. *See Tartt v. Wilson County, Tennessee*, 592 Fed. App'x 441, 447 (6th Cir. 2014) ("[A] plaintiff making an individual disparate-impact claim for discrimination must show that the challenged policy directly disadvantaged him in some fashion.") (quotation omitted).[3]

Furthermore, many of the policies Radtka specifically identifies as having an adverse impact, were not introduced until years after Radtka had worked at

---

[3] The Court does not separately address Walmart's standing arguments because it finds that, aside from these allegations, other allegations in Radtka's complaint have sufficiently set forth the elements of Article III standing.

Walmart. For example, Radtka identifies "a new pay structure" that Walmart implemented in 2004. (Am. Compl. at ¶ 60.) Radtka alleges that this "2004 pay restructuring had an adverse impact on female employees, including Plaintiff, and was not justified by business necessity." (*Id.*) She similarly points to policies and procedures that Walmart adopted in 2005 and 2006 that both "had an adverse impact on women, including Plaintiff." (*Id.* at ¶¶61, 62.) These practices cannot possibly have adversely impacted Radtka when she says her employment ended in 2000.

Finally, Radtka lists a wide range of policies and practices which she maintains have together combined to adversely impact the compensation and promotion opportunities of women at Walmart. Ordinarily, a plaintiff must "demonstrate that each particular challenged employment practice causes a disparate impact." 42 U.S.C. § 2000e-2(k)(1)(B)(i). However, when a plaintiff is able to "demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." *Id.* The problem with Radtka's allegations here is that she fails to connect the dozens of policies and procedures listed in her complaint with discernible, identifiable adverse employment impacts. Instead, she simply generally describes a jumble of disjointed policies and procedures—some affecting pay decisions; some affecting promotion decisions; some in force while Radtka was employed; some not; some affecting management positions; and some affecting only hourly positions—and then asserts that these policies "have had an adverse impact on women," "collectively and individually," with respect to pay and "have all, individually and collectively" adversely impacted female employees in promotions. (Am. Compl. at ¶ 142.) She maintains that she can allege this jumble of policies collectively because (1) "Wal-Mart has failed to create or maintain the data that would allow analysis of the impact of each of these policies and practices individually" and (2) Walmart does not "specify the weight that should be accorded to each of its requirements for pay and promotion." (*Id.* at ¶ 143; *see also id.* at ¶ 94 (asserting that Walmart does not document the reasons for promotions and Walmart "does not create or maintain records that identify the impact of separate components of its promotion policies and practices").)

But in order to proceed in this way, Radtka must do more than just complain about Walmart's recordkeeping practices and instead she must allege that the many steps or practices involved are "so intertwined that they were not capable of separation for analysis" and actually "explain why the well-defined, discrete elements of the [decisionmaking process] are 'not capable of separation for analysis.'" *Davis v. Cintas Corp.*, 717 F.3d 476, 497 (6th Cir. 2013); *see also Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005) ("[I]t is not enough to

simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.") (quotation omitted) (emphasis in original). Strikingly, Radtka herself seems to acknowledge that the practices are capable of separation when she says that the policies are both collectively *and* individually responsible for the resulting adverse impacts. (*See* Am. Compl. at ¶ 142.) Regardless, in the end, Radtka's allegations amount to nothing more than a description of a number of employment practices that she thinks generally favor men over women and her contention that, lumped together, are correlated with various disparate impacts. But, "[i]t is simply not enough to 'point out that the hiring practices at issue are relatively less generous' to some workers than to others." *Davis*, 717 F.3d at 497 (quoting *Smith,* 544 U.S. at 241 (internal quotation alterations in original omitted)). In sum, "a bare assertion of . . . imbalances in the workforce is not enough to establish a Title VII disparate impact claim." *Bennett v. Nucor Corp.*, 656 F.3d 802, 818 (8th Cir. 2011).

### 4. Conclusion

For the foregoing reasons, the Court finds Radtka's complaint and this action are due to be dismissed for her failure to state a claim on either count regarding both her pay and her promotion claims and therefore **grants** Walmart's motion (**ECF No. 7**). Because the Court finds the complaint due to be dismissed for these reasons, it declines to address the other alleged insufficiencies Walmart points to. Further, the Court dismisses Radtka's complaint without leave to amend. Although Radtka states in her amended complaint that she "has agreed to amend," this is not a proper method by which a party may seek leave to amend. *See Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") Moreover, the "additional details" Radtka proffers will not salvage the deficiencies outlined above nor is Radtka even sure that she can properly rely on the new allegations she seeks to add to her complaint. Because Radtka—twice as a putative class member, then as part of a group of plaintiffs, and now as an individual—has had multiple opportunities to amend her complaint, the Court dismisses her complaint with prejudice. *See Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 17-

14179, 2018 WL 3239707, at *3 (11th Cir. July 3, 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."); *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) ("[D]ismissal for failure to state a claim under [Rule] 12(b)(6) is a 'judgment on the merits.'"); *compare with Carter v. HSBC Mortg. Services, Inc.*, 622 Fed. App'x 783, 786 (11th Cir. 2015) ("A *pro se* plaintiff, however, *must* be given at least one chance to amend the complaint before the district court dismisses the action with prejudice, at least where a more carefully drafted complaint might state a claim.") (quotations omitted) (emphasis in original).

The Clerk is directed to **close** this case. Any pending motions are denied as moot.

**Done and ordered**, at Miami, Florida, on October 10, 2019.

_____
Robert N. Scola, Jr.
United States District Judge